UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-20461-CR-MOORE/TORRES

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JESSE CHARLES REVERIO,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON DEFENDANT'S
MOTIONS TO DISMISS INDICTMENT AND TO SUPPRESS**

This matter is before the Court on Defendant Jesse Charles Reverio's ("Defendant") Motions to Dismiss Indictment on Constitutional Grounds [**D.E. 26**] and Based on Government Misconduct [**D.E. 27**], and his Amended Motion to Suppress Statements and Physical Evidence [**D.E. 25**].[1]  A hearing was held on these motions on July 30, 2012.  Having carefully considered Defendant's motions and the government's responses in opposition thereto, the testimony of the witness and the exhibits admitted at the hearing, the oral arguments of counsel, and being fully advised in the premises, the Court recommends that each of Defendant's pending motions be Denied for the reasons forth below.

---

[1]  This matter was referred to the undersigned Magistrate Judge by the Honorable Ursula Ungaro.  [D.E. 48].  Defendant's original Motion to Suppress Statements and Physical Evidence **[D.E. 24]** is **DENIED as moot** in light of his filing the Amended Motion to Suppress [D.E. 25].

## I.   *FACTUAL FINDINGS*[2]

In the early evening of March 1, 2012, Miami-Dade Police Detectives Jared Hahn and Miguel Reyes were patrolling in an unmarked police vehicle in the Liberty City neighborhood of Miami, Florida. The detectives were traveling northbound on NW 12th Avenue and were near NW 58th Street when they observed a man (later determined to be Defendant) standing in the parking lot of a small apartment complex smoking what appeared to be a "blunt," or long uniquely-shaped hand-wrapped marijuana cigarette. Although it was twilight, the parking lot was well-lit by lights at the convenience store next door, and the detectives clearly saw Defendant holding and smoking the cigarette in a manner typical (based on their training and experience) of someone smoking marijuana, i.e., he held the cigarette between the thumb and forefinger of his right hand and cupped it with his left hand, then brought it to his face, still cupped, and took a drag that was longer than the draw time for a tobacco cigarette.

The detectives made a U-turn and, as they pulled into the parking lot, detected the "pungent" odor of marijuana through the open windows of their vehicle. They activated the dashboard lights on the car and exited the car. Although the detectives were dressed in street clothing, they also wore tactical vests with the word "police" on the front and back, as well as badges, guns, and radios. Defendant immediately began running away from the detectives, toward the apartment building. The detectives

---

[2] The facts are based on the uncontradicted testimony of Detective Jared Hahn, whom the Court found to be credible, and the other evidence introduced at the hearing.

announced they were police officers and verbally commanded Defendant to stop, but he ignored them. As Defendant ran, his hand held the waistband of his pants which suggested to the detectives, based on their experience, that Defendant might be in possession of a gun.

The door to the first apartment was open and Defendant ran right in, whereupon he crashed into a big-screen television, lost his footing, and fell onto the side of a couch. The detectives were right behind Defendant and, as he fell and his body partially turned, they could see his hand in his waistband reaching for what appeared to be the butt of a firearm. The detectives immediately secured Defendant in handcuffs. Although his arms were cuffed behind his back, he kept moving his arms and body as if trying to push something that was underneath his belly away from him. The firearm that the detectives had observed in Defendant's waistband was laying on the floor below his abdomen and was recovered. A partially-smoked marijuana cigarette was also retrieved from behind his ear. Defendant was then arrested.

The detectives transported Defendant to their office in a trailer next to the police station. Once inside and seated, Defendant was given a "Miranda Statement Form" ("Form") on which were printed the *Miranda*[3] rights. *See* Govt. Ex. 3. Prior to reading the form and in response to specific questions from Detective Hahn, Defendant stated that he had received his General Education Degree from Miami-Dade College; had no mental health problems; and was familiar with his *Miranda* rights.[4]

---

[3]   *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4]   Government Exhibit 4 includes (a) a certified copy of Defendant's 2002 conviction for uttering a forged instrument in violation of Fla. Stat. § 831.02 and (b)

Defendant then read the Form out loud. After reading each of the *Miranda* rights, Defendant placed his initials beside it to indicate he understood it. Defendant also initialed beside the statement wherein he agreed, having been advised of his *Miranda* rights, to answer the detectives' questions and provide a written statement without having an attorney present. Defendant then provided a hand-written statement in which he acknowledged purchasing the firearm two days prior. Defendant signed at the bottom of the Form under penalty of perjury. Detectives Hahn and Reyes witnessed all this and notarized the Form. Defendant thereafter made oral incriminating statements about the gun to the detectives. He never requested an attorney nor did he ask that the interrogation cease.

Defendant was charged in Florida state court with being a convicted felon in possession of a firearm, among other offenses. *See State v. Reverio*, No. F12-005274 (Fla. Cir. Ct.). Both Detective Hahn and Reyes were subpoenaed for deposition in that case on May 23, 2012; both appeared but neither gave testimony. Detective Hahn told the state assistant public defender he was sick and would not testify that day.[5] At the time, Detective Hahn had not spoken with anyone from the federal government about prosecuting Defendant in federal court for the March 1, 2012 offenses. Only after the deposition did he contact federal agents about the case.

---

the accompanying Arrest Form which includes an officer's statement that Defendant was read his *Miranda* rights then gave a statement to officers.

[5] About an hour and fifteen minutes after he told defense counsel he was sick, Detective Hahn went to work and worked a full shift plus three hours of overtime/comp time.

On May 23, 2012, the state court held a show cause hearing on the matter of the failure to give deposition testimony, then ordered both men to appear for deposition on June 11, 2012.

Prior to that date, though, on June 1, 2012, the federal case against Defendant was commenced through the filing of a criminal complaint in federal court charging Defendant with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). [D.E. 1]. On June 11, 2012, the detectives failed to appear for the court-ordered depositions in the state case. Two days later the state court excluded them as witnesses at trial upon motion of the state assistant public defender. On June 19, 2012, a federal grand jury indicted Defendant for being a felon in possession of a firearm. [D.E. 12]. On July 23, 2012, the state case against Defendant was *nol prossed*.

## II.   ANALYSIS

Defendant filed two motions to dismiss the indictment, one on constitutional grounds and the other based on alleged government misconduct connected to the detectives' refusal to give testimony in the state prosecution. In addition, Defendant claims that the evidence seized and the statements he made following his arrest must be suppressed because the detectives violated the Fourth Amendment when they entered his apartment without a search warrant and without probable cause to believe he had committed a felony offense. Defendant also contends that his post-arrest statements must be suppressed because they were elicited in violation of the Fifth Amendment and *Miranda*.

### A. *Dismissal on Constitutional Grounds*

Defendant moves to dismiss the indictment on the following constitutional grounds: (1) 18 U.S.C. §922(g)(1) is unconstitutional as applied to him under the Second Amendment; (2) 18 U.S.C. § 922(g) is unconstitutional on its face and as applied to him because it criminalizes the intrastate possession of a firearm without requiring a substantial effect on interstate commerce; and (3) 18 U.S.C. § 922(g) violates the Tenth Amendment because it criminalizes the purely intrastate possession of a firearm and ammunition and thereby usurps powers reserved to the States.

Defendant's first constitutional argument, that § 922(g)(1) as applied to him violates the Second Amendment, fails. He acknowledges the Supreme Court's pronouncement in *District of Columbia v. Heller* that longstanding prohibitions on the possession of firearms by felons are "presumptively lawful" under the Second Amendment. 554 U.S. 570, 626-27 & n.26. (2008) ("Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons . . . ."). Defendant nonetheless claims that the statute as applied to him is unconstitutional because he has been rehabilitated and is no more likely than the typical citizen to commit a crime of violence.[6] The statute therefore allegedly violates his fundamental right as a "law-abiding, responsible citizen[] to use arms in defense of hearth and home." *Id.* at 635.

---

[6] Defendant asserts that his sole felony conviction was in 2000 for the crime of uttering a forged document which he committed when he was 24 years old. He further argues that he has remained conviction-free in the years since, and has become a productive and responsible member of society.

Defendant did not identify any persuasive legal authority that compels a determination that § 922(g)(1) is unconstitutional as applied to him. None of the cases cited in his brief involve a felon who was similarly situated to him and who succeeded on such a challenge to this statute. *See United States v. Barton*, 633 F.3d 168, 175 (3d Cir. 2011) (defendant who recently admitted to selling a firearm with an obliterated serial number to a confidential police informant failed to distinguish "his circumstances from those of other felons who are categorically unprotected by the Second Amendment."); *United States v. Chester*, 628 F.3d 673, 674 (4th Cir. 2010) (concerning a domestic violence misdemeanant's conviction for illegal possession of a firearm under 18 U.S.C. § 922(g)(9)); *Britt v. State*, 681 S.E.2d 320, 321-23 (N.C. 2009) (holding that a state statute prohibiting convicted felons from possessing any firearm was an unreasonable regulation and violated the state constitutional right to keep and bear arms as applied to the defendant who, in the 30 years since his conviction for a nonviolent drug crime, had his civil rights fully restored, had not been charged with any other crime, had not misused a firearm in any way, had sought advice from the local sheriff on compliance with state gun laws, and had not been adjudicated nor otherwise accused of being violent, potentially dangerous, or more likely than the general public to commit a crime involving a firearm). We conclude that Defendant has failed to demonstrate why the Second Amendment is unconstitutional as applied to him.

The two other constitutional challenges that Defendant makes in support of dismissal are foreclosed by the law of this circuit. *See, e.g., United States v. McAllister*,

77 F.3d 387, 389-90 (11th Cir. 1996) (§ 922(g)(1) did not violate the Commerce Clause and was not unconstitutional); *United States v. Scott*, 263 F.3d 1270, 1274 (11th Cir. 2001) (reaffirming the holding in *McAllister*); *United States v. Ferreira*, 275 F.3d 1020, 1028 (11th Cir. 2001) (holding that 18 U.S.C. § 924(c), which makes it a crime to use and carry a firearm during a crime of violence, was not an unconstitutional effort to regulate intrastate, non-economic activity); *see also United States v. Smith*, 122 F.3d 1355, 1359 (11th Cir. 1997) ("[W]e are bound by earlier panel holdings . . . unless and until they are overruled en banc or by the Supreme Court."). Defendant concedes that he raised these issues solely to preserve them for appeal.

For the foregoing reasons, we recommend that Defendant's motion to dismiss the indictment on constitutional grounds be Denied.

### B.   *Dismissal Based on Government Misconduct*

Defendant also seeks dismissal of the indictment because individuals handling his federal investigation and prosecution violated state law to deny him access to witnesses. He alleges that Detectives Hahn and Reyes refused to give deposition testimony in the state proceeding based on instructions from federal law enforcement officials. This "egregious" conduct by federal officials, he says, violated his due process rights to defend against the criminal charges and obtain compulsory process over witnesses and should result in dismissal of the indictment.

We find Defendant's allegations of misconduct to be unfounded. Detective Hahn testified credibly that he did not speak about Defendant with anyone in the federal government prior to May 23, 2012, the date of his deposition. He also gave a plausible

explanation as to why he would not testify on that date. Moreover, defense counsel acknowledged at the evidentiary hearing that he had no contrary evidence indicating that Detective Hahn had communicated with anyone from the federal government prior to the deposition date. Consequently, Defendant's allegations of egregious government conduct are baseless.

Moreover, Defendant has failed to demonstrate that he suffered any prejudice as a result of his inability to obtain testimony in the state proceeding. Clearly there was no prejudice in state court because the judge there precluded the detectives from testifying at trial, then the state *nol prossed* the charges against Defendant.

Nor has Defendant has shown or even alleged prejudice in the federal proceeding. To the extent that Defendant is claiming he was denied access to witnesses crucial to his defense in *this* proceeding (although he does not expressly state that), the claim is without merit. First, a criminal defendant in a federal case has a limited right to take depositions, *see* Fed. R. Crim. P. 15, and Defendant has not suggested that he is entitled to do so in this case. Moreover, the federal prosecutor represents (and Defendant does not deny) that the government's main two witnesses, Detectives Hahn and Reyes, have always been apparent to Defendant, and further, that the government never made any witness unavailable to him. Finally, Defendant was able to examine Detective Hahn under oath at the suppression hearing and now has a sworn statement from one of the government's main witnesses.

We also note that Defendant failed to show any prejudice as a result of the three months that elapsed between the date of his arrest on March 1, 2012, and the date the

federal case against him was commenced on June 1, 2012 (when the criminal complaint was filed in this Court). *See, e.g., United States v. Campbell*, No. 1:04-CR-0424-RWS, 2005 WL 6436621, at *3 (N.D. Ga. Oct. 24, 2005) (a defendant bears a "heavy burden of proving actual prejudice from pre-indictment delay[;] concrete proof is required [and] mere speculation and bare allegations will not suffice." (internal citation omitted)).

We conclude, then, that Defendant has not demonstrated how his due process rights were violated by government conduct. Consequently, his motion to dismiss on this ground should be denied.

### C. *Suppression of Evidence and Statements*

Defendant moves to suppress evidence seized at the time of his arrest as well as the post-arrest statements he made at the police station.[7] He contends that the detectives did not have probable cause to arrest him for smoking a marijuana cigarette. Even if they did, Defendant argues that because the offense for which they pursued him into the apartment was a misdemeanor rather than a felony, exigent circumstances that could justify the warrantless entry did not exist. He therefore seeks to suppress all post-entry evidence and statements. He also claims that the detectives did not *Mirandize* him and consequently his post-arrest statements must be suppressed.

---

[7] As we stated at the evidentiary hearing, we will assume for purposes of the suppression motion that Defendant has standing to challenge the warrantless entry into the apartment in which he was arrested.

### *1.   Evidence*

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and further provides that "no Warrants shall issue, but upon probable cause." U.S. const. amend. IV. "It is a 'basic principle of Fourth Amendment law' that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York,* 445 U.S. 573, 586 (1980) (citation omitted); *see also United States v. Burgos,* 720 F.2d 1520, 1525 (11th Cir. 1983) (citing *Payton*, 445 U.S. at 586).

The presumption against a warrantless entry may be overcome, however, "because the ultimate touchstone of the Fourth Amendment is "reasonableness."" *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011) (quoting *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006)) (quotation marks omitted). It is now well-established that an officer may conduct a warrantless entry into a home if both probable cause to arrest and exigent circumstances exist. *See, e.g., United States v. Ramos*, 933 F.2d 968, 972 (11th Cir. 1991); *Burgos*, 720 F.2d at 1525 (warrantless entry must be justified by both probable cause and exigent circumstances).

Probable cause to arrest exists when officers have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that a suspect has committed or is committing an offense. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002).

"Exigent circumstances exist 'when the inevitable delay incident to obtaining a warrant must give way to an urgent need for immediate action.'" *United States v.*

*Ramos*, 933 F.2d 968, 972 (11th Cir. 1991) (citation omitted); *United States v. Blasco*, 702 F.2d 1315, 1325 (11th Cir. 1983) (the exigency exception applies when "the societal costs of obtaining a warrant, such as danger to law officers or the risk of loss or destruction of evidence, outweigh the reasons for prior recourse to a neutral magistrate." (quoting *Arkansas v. Sanders*, 442 U.S. 753, 759 (1979))). Although "[c]ourts have catalogued several situations in which exigent circumstances exist, . . . it is clear that the exception must be applied carefully to each factual scenario." *United States v. Lynch,* 934 F.2d 1226, 1232 (11th Cir. 1991) (quoting *Blasco,* 702 F.2d at 1325).

Recognized factors that may indicate exigent circumstances include, in addition to the "hot pursuit" of a fleeing suspect:

> (1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) a reasonable belief that the suspect is armed; (3) probable cause to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; [and] (5) a likelihood that delay could cause the escape of the suspect or the destruction of essential evidence, or jeopardize the safety of officers or the public.

*United States v. Standridge*, 810 F.2d 1034, 1037 (11th Cir. 1987); *see also Ramos*, 933 F.2d at 972 (citing *Standridge*). The government bears the burden of establishing that officers had probable cause and that an exigency existed. *United States v. Holloway*, 290 F.3d 1331, 1337 (11th Cir. 2002); *see also Chimel v. California,* 395 U.S. 752, 762 (1969) (the burden is on the party seeking an exemption from the warrant requirement to show the need for it).

Here, we find that the detectives had probable cause to arrest Defendant for possession of marijuana. Detective Hahn testified that he saw Defendant smoking what appeared to be a hand-rolled marijuana cigarette, then smelled marijuana through the open window of his vehicle a moment later. These facts were sufficient to warrant the detectives' reasonable belief that they were witnessing the commission of a crime.

We also find that the detectives were in hot pursuit of a fleeing suspect when they chased Defendant into the apartment. Defendant fled as soon as he became aware of the detectives. He ignored their commands to stop, headed straight for the open door of the first apartment in the complex, and ran inside with the detectives right on his heels. Once Defendant entered the apartment, he easily could have destroyed evidence of his crime (the marijuana cigarette).

If the detectives had probable cause to arrest Defendant for the commission of a felony drug offense, we would have no difficulty concluding that the warrantless entry was lawful. After all, "a suspect may not defeat an imminent arrest by escaping into his house." *Ramos*, 933 F.2d at 972 (citing *United States v. Santana*, 427 U.S. 38, 43 (1976) (suspect may not thwart an otherwise proper arrest by retreating into her house)).

But, as the government has acknowledged, the detectives only had probable cause to arrest Defendant for the misdemeanor possession of marijuana. Citing *Welsh v. Wisconsin*, 466 U.S. 740 (1984), Defendant argues that exigent circumstances can

never exist when the offense for which officers are attempting to effect an arrest is a misdemeanor rather than a felony offense.

We disagree. The Supreme Court in *Welsh* held that the Fourth Amendment prohibits the police from making a warrantless entry into a person's home in order to arrest him for a nonjailable civil traffic offense. *Id.* at 754. The police officer in that case entered the defendant's house at night without a warrant after a witness reported seeing the defendant drive erratically and swerve off the road, and appear to be very inebriated or very sick when he walked away and abandoned his car. *Id.* at 742-43. The State of Wisconsin attempted to justify the warrantless entry by arguing that an exigency existed given the need to preserve evidence of the defendant's blood-alcohol level, i.e., evidence of the offense of driving while intoxicated ("DWI"). *Id.* at 753.[8]

The Court rejected the "exigency based on imminent destruction of evidence" rationale because the defendant was arrested for "a noncriminal, civil forfeiture offense for which no imprisonment [was] possible." *Id.* at 754. Reasoning that it would be "difficult to rebut" the presumption of unreasonableness that attaches to all warrantless home arrests when the government's interest was "only to arrest for a minor offense," *id.* at 750, the Court concluded that "the gravity of the underlying offense" is "an important" factor to be considered when determining whether any exigency exist[ed]." *Id.* at 753. The Court did not, however, define "minor offense" nor

---

[8] The State's claim of exigency based on the hot pursuit doctrine failed as there was no immediate or continuous pursuit of the defendant from the scene of the crime. *Id.* at 753.

did it distinguish between misdemeanor and felony offenses for purposes of the exigency showing that is necessary to justify a warrantless entry into a home.

Rather than creating a felony-misdemeanor dichotomy, the Court looked to the State's classification of the offense for which the defendant was arrested (first offense for DWI) because the penalty that attaches to a particular offense "is the best indication of the State's interest in precipitating an arrest, and is one that can be easily identified both by the courts and by officers faced with a decision to arrest." *Id*. at 754. Given that the State chose to classify defendant's offense as a civil traffic offense, "a warrantless home arrest cannot be upheld simply because evidence of the [defendant's] blood-alcohol level might have dissipated while the police obtained a warrant." *Id*. & n.14 (acknowledging that prevention of drunken driving was of major concern to the States, however, Wisconsin and other States had chosen to limit severely the penalties that could be imposed for a first conviction of DWI).

It follows from *Welsh* that the proper focus of inquiry, when considering whether exigent circumstances existed sufficient to support a warrantless entry, is whether the offense for which an individual was arrested is a jailable or nonjailable offense, not whether it is classified as a felony or misdemeanor.

The only case Defendant cited to support his argument that exigent circumstances exist only when the police have probable cause to believe that evidence of a felony is about to be destroyed is *Kentucky v. King*, 131 S.Ct. 1849 (2011). A review of the underlying facts in that case, however, shows that the officers based their warrantless entry on the strong odor of burnt marijuana emanating from the

apartment and the sound of movement inside the apartment that began after officers knocked on the door, leading them to believe that evidence was about to be destroyed. *See King v. Commonwealth*, 302 S.W.3d 649, 651-52 (Ky. 2010) (factual findings taken from the Kentucky Supreme Court's opinion).[9] *King* thus supports the conclusion that exigent circumstances can exist when the crime at issue in a misdemeanor offense. *See also Floyd*, 281 F.3d 1346, 1348-49 (11th Cir. 2002) (upholding an officer's warrantless entry onto private property where probable cause to arrest the defendant for public drunkenness existed).

On the other hand, our conclusion that the proper focus is whether an offense is punishable by jail is supported by *Illinois v. McArthur*, 531 U.S. 326 (2001). Police officers with probable cause to believe that the defendant had stashed marijuana under the couch inside his trailer home prevented his re-entry while they obtained a search warrant. *Id.* at 331-32. The defendant argued that *Welsh* controlled because the officers in his case acted to prevent the destruction of evidence of a misdemeanor crime, just as the officer in *Welsh* had done. *Id.* at 335-36.

The Court distinguished *Welsh* in part based on the penalties that attached to the respective crimes: *Welsh* involved a "nonjailable traffic offense" whereas *McArthur* involved "crimes that were 'jailable,' not 'nonjailable.'" *Id.* at 336. As the Court explained:

---

[9] The Supreme Court in *King* assumed both probable cause and exigent circumstances based on the need to prevent imminent destruction of evidence, as the Kentucky Supreme Court had done. 131 S.Ct. at 1862-63.

> the need to preserve evidence of a "jailable" offense was sufficiently urgent or pressing to justify the restriction upon entry that the police imposed. We need not decide whether the circumstances before us would have justified a greater restriction for this type of offense or the same restriction were only a "nonjailable" offense at issue.

*Id.* at 336.

Having determined that both probable cause and exigent circumstances existed, we conclude that the detectives' warrantless entry in this case did not violate the Fourth Amendment. The detectives were lawfully inside the apartment when they saw the firearm in plain view on the ground beneath Defendant's body. There is thus no basis under the Fourth Amendment to suppress the firearm or the statements that Defendant made later at the station.

### 2. *Statements*

In *Miranda*, the Supreme Court established certain procedural safeguards that require law enforcement officers to advise criminal suspects of certain constitutional rights before they may initiate custodial interrogation. A suspect must be told "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 U.S. at 479. The suspect must be afforded the opportunity to exercise those rights throughout the interrogation. *Id.* Once an accused has been advised of these rights, he may knowingly and intelligently waive them, and statements made subsequent to the waiver may be admitted against him at trial. *Edwards v. Arizona*, 451 U.S. 477, 482 (1981). Whether a waiver has occurred depends "upon the particular

facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." *Id.*

We find that Defendant knowingly and willingly waived his *Miranda* rights when he answered the detectives' questions and provided oral and written statements to them after his arrest. Defendant has a GED and told the detectives he was familiar with his *Miranda* rights (perhaps because he had been advised of those rights after his felony arrest in 2002). He read the Miranda Statement Form out loud and indicated in writing that he understood his rights and would waive them by speaking with the detectives and providing a written statement outside the presence of an attorney. He then did both without ever invoking his right to remain silent or to counsel. There is no evidence that Defendant was impaired at any time or that his statements were the product of threats or coercion by the detectives.

Because Defendant's statements were the product of a knowing, voluntary, and intelligent waiver of his *Miranda* rights, there is no basis to suppress them.

For all the foregoing reasons, we recommend that Defendant's motion to suppress evidence and statements be denied.

### III.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge does hereby **RECOMMEND** as follows:

1. Defendant's Amended Motion to Suppress Statements and Physical Evidence [**D.E. 25**] be **DENIED**;

2. Defendant's Motion to Dismiss Indictment on Constitutional Grounds [**D.E. 26**] be **DENIED**; and

3. Defendant's Motion to Dismiss Indictment Based on Government Misconduct [**D.E. 27**] be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable K. Michael Moore, United States District Judge. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the report and bar the parties from attacking on appeal the factual findings contained herein. *R.T.C. v. Hallmark Builders, Inc.,* 996 F.2d 1144, 1149 (11th Cir. 1993); *LoConte v. Dugger*, 847 F.2d 745 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc); 28 U.S.C. § 636(b)(1).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 7th day of August, 2012.

/s/ *Edwin G. Torres*
EDWIN G. TORRES
United States Magistrate Judge